Good morning, your honors. Jean Reese, pro bono counsel for Petitioner Jose Montoya Gomez. I'll reserve five minutes for rebuttal. Keep your eye on the clock. I will. Thank you. This court should remand this matter for three reasons. The first is that the Board of Immigration Appeals failed to consider the motion to remand that was submitted. The Board of Immigration Appeals did not rule on the denial. The reference to the motion to remand is on page four in a paragraph discussing due process and discussing prejudice. The Board says because Mr. Montoya Gomez did not show prejudice or did not show the outcome of the proceedings would change, remand wasn't warranted. Mr. Montoya Gomez requested remand due to extreme country condition changes in El Salvador and evidence of the Salvadoran government arresting 58,000 people in eight months, building a 40,000 prison, and evidence that deportees were targeted by the government for torture, for arrest. And these country conditions directly affect Mr. Montoya Gomez's likelihood of torture if returned to El Salvador. The country conditions were not addressed. The motion was not addressed. And like in Naryan where the board failed to consider country conditions of worsening conditions in Fiji, this court should remand. Counsel, your client, starting with the due process comment, he had three previous continuations, asked for a fourth. I think the IJ very reasonably said, no, we're not for that. Did you bring up in your opening brief the would-likely-change standard? And if so, where in the brief? The would-likely-change in context of the motion to remand? No, because that's not the standard. What is the standard? The standard for a brief is prima facie eligibility for relief. And that was... And what in this case might that be? The evidence that shows that deportees are targeted for torture by the government and gangs. But, you know, you're a good lawyer, but just remember that when you start talking about country conditions, you've got to have something that's particularized to your client. And I don't see anything in the record that suggests that your client ever introduced any evidence that showed any change of circumstances with respect to him. Now, you can have country conditions... We hear it all the time, as I'm sure you know, the Ninth Circuit has lots and lots and lots of immigration cases. We had one yesterday afternoon, somebody arguing very much the same thing that you did, arguably changed country conditions, but nothing that tied those to that particular petitioner. And without that, you've got a problem, don't you? Well, evidence of mass human rights violations is a factor that the court must consider in a Convention Against Torture claim. And on page 34 of the Human Rights Watch report, it cites that individuals deported to the U.S. are targeted by the government. And Mr. Jose Montoya Gomez has lived in the U.S. for 40 years, is a permanent resident for 30 years, would be deported to Salvador. But I think more importantly, Your Honor, is the board never provided a reasoned explanation. The board never said he didn't show particularized evidence. The board was completely silent on the motion to remand. And like in Movsician, where the court did not have a reasoned, cogent denial to review, this court had to remand. What's your best case that you think is on all fours from your perspective? I think it's Narion, because here we don't have, you don't have a reasoned decision. I think Narion and Movsician, but you don't have a reasoned decision. You just have this one sentence that, because he didn't show the outcome proceedings. But didn't the board adopt the findings of the IJ in that, what our case law says? Well, the board didn't adopt all the findings of the IJ, but couldn't, you know, the IJ didn't consider the motion to remand. This was just what the board did. So the board provides no, nothing for this court to review as to the reason for the denial, other than potentially the application of the wrong standard under it would likely change. To the due process argument, and I, Your Honor had indicated that, you know, you did not think that the continuances were unreasonable. I think, you know, Aerie and Bewatt both talk about business days. And we're talking about a extraordinary case where you have this kind of COVID pandemic lockdown. There's 23 business days, ultimately, that Mr. Montoya Gomez was provided to find an attorney. And there was potentially an additional 10 days, but he was quarantined for that time. He stated, we don't have access, we're in lockdown, I can't get to the library. He was Spanish speaking, he was detained. And so it was unreasonable in this situation for the court to deny him the opportunity to find an attorney. But he had three months, did he not? Well, I think if you look at the timing, it's, you know, I calculated it out to be 23 business days. There could be, okay, let's say 33 with the 10 days, but he was quarantined. So it's unclear how much time of that quarantine he had to find an attorney. And I think also, it's not just his availability, but the attorney's availabilities to, during this lockdown time, take on new clients. So why this is so important too is, this is not a case where you have maybe a recently arrived asylum seeker. This is a permanent resident for 30 years, who is going to have his permanent residence taken away. And the government has the burden to show that he has this criminal conviction that's for the grounds of deportability. Without an attorney, the judge asked him questions. And based solely on those questions, and no other evidence introduced by the government, was he found removable. And the immigration judge did not even tell him the charge against him. And that's reflected in the ICE attorney's confusion later at the merits hearing about what charge and whether he was found removable. The denial of the attorney there was at a crucial moment in the pleading stage. And this is a fundamental constitutional statutory right to an attorney. The denial of a continuance was unreasonable. It amounted to the denial of an attorney. And Montesquieu- But what is the, I mean, he isn't contesting the fact that he was convicted of and served time for a very serious criminal charge, does he? He's contesting that he wasn't allowed an attorney. And so the removal proceedings, the pleading stage, the court cannot have jurisdiction, cannot remove anyone without finding removability. Had the government not been able to meet its burden, he would have been released. And now the fundamental kind of procedural, constitutional, and statutory rights here were violated. And Montes Lopez V Holder says prejudice is presumed. There also is a showing presence. The outcomes could have been different if the government couldn't have met their burden. Does he have a constitutional right to have an attorney at an immigration hearing of this nature? Yes, so there's a- What's your case you're relying on? Ari and Biwat talk about the constitutional right to an attorney under the Fifth Amendment constitutional, so a due process, and not a Sixth Amendment, but under the Fifth Amendment. You're saying you're entitled for a portion of it, but not all of it? No, for all of the immigration removal proceedings, yes. And this is a critical stage because, again, removability, the relief doesn't matter if someone is not removable. So he is a permanent resident until the government establishes that he is removable for his conviction, and during this critical stage, he was not represented by an attorney. He never waived his right to an attorney, and that was a violation. I find your position quite remarkable, frankly, I really do. It is, as my colleague pointed out, your client convicted a serious offense, served time in jail, it's kind of a prima facie case. Whether you have an attorney or not have an attorney, I don't know what the difference is, frankly. What would they say? Let's say you're the attorney, I'm the IJ. What are you going to tell me that excuses your client's, the application of the statute that would require him to be removed because of the crime? What would you say? I would deny the allegations. I would contest- That he served time and he'd been convicted? Yes, just like if I were charged with a crime, I have the right to plead not guilty. Even if I confess to a police officer before that, I have the right to plead not guilty and put the government to its burden. So in this situation, if I were the attorney representing Mr. Montoya Gomez, I would have denied the allegations and contested the charge, put the government to their burden. At that time, the government would have to introduce evidence. I would have the opportunity to review it, to make objections. Then the immigration judge would determine based on that. And in this case, was no evidence produced that he was convicted and served time? It had not been admitted until much later. It had been admitted in October, but this removal proceeding took place in April. So it had not been admitted into evidence. And Mr. Montoya Gomez was not provided, the judge didn't see if he had received those documents, did not provide him the charge. There was an amended charge. He didn't ask if he had received the amended notice. So these are fundamental due process violations. Yeah, you read the record a little differently than I do, but you're a good lawyer. What the heck. You want to save any of your time, or you want to, whatever you'd like. I would. I'll just say one thing about the cat. There is evidence that deportees are targeted. That evidence was not considered by the IJ. The evidence was not considered by the board. The denial was based on the fact that he couldn't identify or name people who would torture him. That's the wrong standard. And I'll reserve the rest of my time. Thank you. Very well. All right, so Ms. Vick, I believe, right? Good morning, your honors. Good morning. Lindsey Vick on behalf of the Attorney General. I guess I'd like to start with the due process violation that we were just discussing. I think it's important to note that he ultimately had counsel for his merits hearing. And also taking a step back at the removability hearing, the conviction records were actually submitted to the IJ in April of 2020. And they're at the- Those are the conviction records, right? The conviction records for the attempted rape conviction. So that's at car 559 in case anyone missed it. But so the IJ did have the benefit of the record of conviction when he made the removability finding in June of 2020. And petitioner had had three continuances to find counsel before that fourth hearing. And at that point, the IJ found that it simply wasn't reasonable to keep continuing proceedings indefinitely, we were in the COVID pandemic. And at that time, IJs didn't wanna keep people in detention forever. So things needed to move more quickly. And also, there's no bright line rule for what is a reasonable amount of continuances. And I think in this case, under this record, it was reasonable to give this respondent three continuances. And then it was just to complete a preliminary stage of the proceeding. He thereafter had more process due to him. He had several other hearings. He was continuing to look for counsel. The IJ continued to let him know about his right to counsel and various procedures. The IJ was very patient with him. And there's no evidence that the IJ was interrogating or hostile, such as the IJ in Montes Lopez. And- I think that the final merits hearing was what, the eighth hearing? Yes, yes it was. And counsel finally appeared for petitioner at the seventh hearing. And it was at that hearing that she requested more time. And I believe it was also at that hearing that the judge said that he would give more time for attorney preparation for the CAT application, for the asylum application. And she ended up having, I think, two months to prepare before the October merits hearing. And so I just, I feel like under, even under Aerie v. Barr, the court held that the petitioner there was not denied the right to counsel when the IJ had the petitioner proceed pro se at a merits hearing. And here we're talking about an earlier proceeding. Also what hasn't been mentioned is that nothing prevented counsel from challenging removability once he had retained that counsel. Counsel could have moved to withdraw the pleadings. And in fact, counsel did argue against finding his crime to be particularly serious in pre-hearing briefing, but conceded the ineligibility for asylum. So there was ample opportunity for his eventual attorney to raise the issues of removability and his conviction. And so ultimately, petitioner was not denied a full and fair hearing. The IJ explained his right to counsel again numerously and explained procedures. Now, I'll move to the remand denial issue. So petitioner didn't challenge the actual remand denial in their opening briefs. So our first argument is that it's technically waived. But in any event, the entire remand denial process, the entire last paragraph of the board's decision actually disposes of the remand motion. And you have to read it in context with the preceding paragraph, which deals with the board's cat denial. And so in that preceding paragraph, the board had just finished explaining how the generalized evidence of country conditions was insufficient for cat protection. And so it didn't need to particularly reference the additional report that was filed with the remand motion because it was already considering in its remand denial in that paragraph, the country conditions evidence that had been submitted in the record and that it found unconvincing. Unconvincing that returnees are often tortured or arrested upon their return to El Salvador? I think, well, I mean, I guess, more precisely, unconvincing that it showed any particularized risk or individualized risk of harm. Does the country condition say that everybody returned from the U.S. is detained? I don't know that it says everybody. I think it says there's a risk. But I don't know that the report says every single person. It doesn't have to be 100%. It just has to be a little over 50%, right? Sure, sure. But you also have to look at the rest of the elements and the rest of the evidence here. And we just we don't have any evidence that he would be subjected to individualized harm, that he would be targeted for individualized harm. All we have is this generalized evidence. He's been a lawful permanent resident since, what, 1992? I believe so. That's unusual. Maybe it's because he went from 1992 to, what, 2018 before he had his criminal conviction. He had been a lawful permanent resident for a long time here in the U.S. He had, yes, yes. And he did have a criminal history prior to the ultimate conviction that rendered him removable. But that's not really relevant for this analysis. If he had won the right to a new hearing, given the criminal conviction, is there any way he could have found a different result, or would it just be more of the same? I think it would be more of the same, because for that particular conviction, I mean, I haven't done a categorical approach analysis of that statute, but I'm fairly certain that no court has found that that conviction does not render someone removable. And again, no argument. Let's assume our case law says it meets Taylor, and he came right back before the IJ. Is there any way that there would have been a different result? I suppose if it was a question, if it was argued that his conviction did not qualify as a removable conviction. But again— How could that be? What would that argument sound like? What would it be? Well, I think they would first—what they could have done is file a motion to withdraw the pleadings, and then redo the pleadings, and then there would be hearing or briefing on removability, and it's at that point that they would argue the categorical analysis and look at the record and determine whether his conviction rendered him removable. I guess what I'm saying under Taylor, assuming the categorical analysis is not a problem, and it's clearly the kind of a crime that warrants removal, what I struggle with is even if I credit fully what your friend argues, it's just kind of going around in a circle. He'd be back where he started from but would end up in exactly the same place because that's what the statute requires. Am I missing something? I don't think you are, and his counsel did concede ineligibility for asylum, and she did argue that it wasn't a particularly serious crime, but she conceded ineligibility for asylum. She conceded it was an aggravated felony, and the fact that maybe he doesn't like that that happened, that's a whole different claim, and that's not a claim that's before this court. And so the other reason why we can see that the whole last paragraph disposes with the motion to remand totally is because the board cites matter of Coelho and says that it determined that Petitioner failed to show any of his evidence would change the outcome of the proceedings, and basically it was saying here that it found insufficient evidence for any relief that he had requested. And again, that's guided by the previous paragraph dealing with the CAC relief and the country conditions evidence. But to the extent there is any error in that remand denial, that error is harmless. And so the evidence Petitioner submitted of one citation to one online article about country conditions in El Salvador is not material to his claim because it didn't show a particularized risk. And again, the board considered that exact analysis, and ultimately it was duplicative. It was duplicative of the evidence already in the record, and that article simply doesn't move the needle on the torture analysis. And also I'd like to note that with respect to the denial of CAT deferral, we have to look at whether the record does not compel reversal, and here the record does not compel reversal. The board affirmed in his decision that Petitioner was not tortured in the past. He presented a speculative claim of fear in El Salvador of unnamed individuals. His fear was patently lacking in state action, and the board affirmed. Well, his basis was what he had three uncles, some of whom were killed, some were imprisoned, all sort of being anti-government protesters, and he was saying, what, because he's a nephew, they're likely to single him out? Is that sort of his argument? That's how I understand it, and without more detail, it's hard to determine how those uncles were connected, if they were connected, targeted together for the same reason. It looks more like his uncles each suffered unfortunate circumstances, and so he fears suffering similar unfortunate circumstances that aren't tied to any particular state action. And also the harm that they suffered has no relation to any facts or harm that he's been threatened with or has suffered. He simply shows no connection to those activities, and he hasn't been in El Salvador for decades. So it's attenuated at best. I think it's really reaching. And so again, the board affirmed the conclusion that his fear of generalized crime and violence in El Salvador is not particular to him and was insufficient for CAT. Did the board conclude or the IJ conclude that the uncles were basically targets of gangs and criminal activity as opposed to governmental involvement, or did the government get involved in some way? Did you say did the board find? In other words, was the fact finder in this case, did they conclude that the uncle, to the degree they dealt with it at all, talk about the harm that they suffered? In other words, was it as a result of criminal activities by gangs, or was it an allegation that the government was involved directly? I believe it's a little bit of both. If you look at the top first paragraph, it's CAR 6. The board talks about how respondents said that he fears gangs will hurt him and gang members kill people that refuse to pay money. And then that's also in conjunction with- That's a criminal activity that's not tied to government. Right, right. And then he does mention his fear of, I guess, maybe paramilitaries or government officials who may have killed his uncle for something done in the 80s during the Civil War. And that's about it. And again, he does have the country conditions evidence, which shows a very unfortunate circumstance in El Salvador. There's no doubt about that. But that alone does not show that someone should get cat deferral. They have to show particularized risk. That's the big issue here, I gather, is that there was no showing a particularized threat to him or, for that matter, past persecution. Correct, correct. And again, he's had several bites at the apple now. He's had several chances to present evidence, to present briefing. And at the end of the day, the remand motion, all it included was citation to one article. It didn't include additional evidence particular to him, which it could have and which it should have. When you file a motion to remand for relief, you're supposed to attach everything that you would provide on remand. And so that was not done here, and I think the board found it unconvincing, and so that's why it dealt with the remand request as it did. If there are no further questions. Other questions by my colleagues? I think not. Thank you. Thank you very much. All right, so Ms. Reese, you've got a little bit of time left. Thank you. I just would like to point out that the motion to remand and the evidence provided about an extreme change in country conditions since his 2020 hearing is separate from the merits of the cat application that was provided during the merits hearing. The government says there's no materiality, there's no showing of evidence. Mr. Montoya Gomez submitted a 94-page human rights report that identified deportees are at risk of torture from the El Salvadoran government. But the language of the remand follows a string site that says prejudice talks about whether the outcome is likely to change and follows that site with the sentence because he hasn't shown the outcome is likely to change. That's the standard, is it not, that it would likely change? No, the standard is based on a motion to remand based on new evidence is whether or not there's a prima facie eligibility for evidence that's material and hadn't been previously and couldn't have been previously presented. That's the standard, and the court doesn't address those documents at all, doesn't address materiality, just says- How do you determine the prima facie? I mean, the underlying standard is greater than 50%, right? And so if you're going to show a prima facie case that you can meet the underlying standard, is there a discount on that? There is. It's a prima facie, it's a reasonable likelihood. Right, but I think if I was the IJ or the BA sitting there trying to figure out whether or not there's a prima facie, I'd have to say, well, is there a reasonable likelihood that this petitioner can show a greater than 50% chance? Is that the way they would have to- The board should have done that, but they didn't. Well, is there a reasonable likelihood that he could meet the standard? Yes. And the standard, but so the greater than 50% standard still comes into play even at the prima facie stage, I assume, right? Because you're trying to figure out if they can meet that standard. Right, but- it would be easier to show a prima facie case, right? I think I understand what you're saying, and I think I agree. Well, I guess what I'm getting at is there's been some discussion here about he's relying on country conditions evidence, right? And the country conditions, we get this in these cases all the time, and I think my colleague, Judge Smith, was talking about this, but he's relying on this. But the problem is, well, it may show some bad things happen. It doesn't show that that happens over 50% of the time. In other words, like every single other- like more often than not, every person that comes back to- that returns ends up suffering torture or its equivalent, you know, death or something. And that's what he would have to be able to show is his prima facie, that he would be able to show that. So I'm struggling to see how the BIA erred in saying, yeah, you haven't been able to make your prima facie case because this country conditions evidence, it might be bad. 25% would be really bad, but 25% wouldn't meet his standard, right? But the BIA never said that. The BIA never talked about- They just said he didn't meet his prima facie case. They didn't. They just said he couldn't show the outcome of the proceedings would change. That's all they said. Well, but for the outcomes of the proceedings to change, he would have to be able to make his- it seems to me that's kind of saying the same thing. It's not. Because there's case law that says you have to address a prima facie eligibility. Excuse me. All the cases this government cites, too, there is an analysis there about whether or not that burden is met. It doesn't happen here. The change of the outcome of proceedings may be for prejudice, may be for a discretionary application, but when you're providing new evidence for a nondiscretionary application, there has to be an assessment. And I don't think that this court is permitted to assume that saying you didn't show the outcome of the proceedings would change means that the court has said I'm analyzing Kat and have determined you haven't shown prima facie eligibility based on new evidence. But you're talking magic words, are you not? I mean, the reality is I question whether this is all new evidence anyway. This has been going on in the court almost 20 years. This is not new. It's been going on and on and on. You say there was some new stuff. Maybe there was. The state of exception, I think the court could take judicial notice that that happened in 2022 after the merits hearing. But the reality is this is a continual pattern, allegations of abuse and returnees and so on. But in this case, as my colleague has pointed out, the reality is unless you're using magic words, what the BIA looks at is, okay, is there something here that would be particularized to this petitioner that would change the result, whether it's pure prejudice? They concluded no. But they didn't conclude no. Well, you said not. But I'm just saying that's magic words. No, but the law requires specific cogent reasons to deny, and that is not the case here. The outcome would be different. Is that due process? Is that, you know, what is the court talking about? So I think that's why the question came in. We have your position. We thank you both for your argument. Any other questions by my colleague? I think not. We thank counsel for your argument. The case as argued is submitted, and the court stands adjourned both for today, tomorrow, and the week. Thank you. All rise. This court for this session stands adjourned.
judges: Gilman, SMITH, VANDYKE